UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

STEVEN ADAMS,

        Plaintiff,        CIV. S-02-0690 LKK PAN P

    v.

DIANE BUTLER, et al.,        Findings and Recommendation

        Defendants.

—oOo—

In April 1986 petitioner killed a friend in Siskiyou County and fled to Nevada. He was captured and returned to Siskiyou County for trial for second-degree murder. At trial, he denied the killing. He was convicted and sentenced to 15 years' to life imprisonment with the possibility of parole. When parole was denied in August 1999, he pursued administrative remedies, then sought habeas corpus relief from the state courts and then began this proceeding.

////

Under California law, a prisoner including a convicted murderer serving an indeterminate term (i.e., 15 years to life), is entitled to a hearing before a panel composed of members of a board to determine his suitability for parole. By statute, parole at some point normally is appropriate and the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration. . . ." Cal. Penal Code § 3041(b).

State regulations prescribe factors for the panel to consider in determining whether each prisoner is suitable or unsuitable for parole. Factors supporting a finding of unsuitability include: (1) whether the prisoner's offense for which he is confined was committed in an "especially heinous, atrocious or cruel manner"; (2) the prisoner's record of violence prior to the offense; (3) whether the prisoner has an unstable social history; (4) whether the prisoner has committed sadistic sexual offenses; (5) whether the prisoner has a lengthy history of severe mental problems related to the offense; and (6) whether the prisoner has engaged in serious misconduct in prison or jail. Factors supporting a finding of suitability include: (1) whether the prisoner has a juvenile record; (2) whether the prisoner has experienced reasonably stable relationships with others; (3) whether the prisoner shows signs of remorse; (4) whether the prisoner committed his crime as the result of significant stress

in his life; (5) whether the prisoner suffered from Battered Woman Syndrome when she committed the crime; (6) whether the prisoner lacks any significant history of violent crime; (7) whether the prisoner's present age reduces the probability of recidivism; (8) whether the prisoner has made realistic plans for release or has developed marketable skills that can be put to use on release; and (9) whether the prisoner's institutional activities indicate an enhanced ability to function within the law upon release.  15 Cal. Admin. Code § 2281.

California's parole scheme gives rise to a protected liberty interest in release on parole.  McQuillion v. Duncan, 306 F.3d 895, 902 (2002); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 (1979); Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003); In re Rosenkrantz, 29 Cal. 4th 616 (2003).  That is so because the parole statute, Penal Code § 3041, uses mandatory language ("The panel or board shall set a release date unless it determines" further incarceration is necessary in the interest of public safety) which "'creates a presumption that parole release will be granted,'" unless the statutorily defined determinations are made. Board of Pardons v. Allen, 482 U.S. 369, 378 (1987) (quoting Greenholtz, 442 U.S. at 12).  As of 1988, by amendment of the state constitution, a parole date given can be withdrawn by the Governor under the same factors considered by the Board.
////

3

Therefore, petitioner is entitled to the process outlined in Greenholtz, viz., notice, opportunity to be heard, a statement of reasons for decision, and limited right to call and cross-examine witnesses.  The determination that petitioner is unsuitable for parole must be supported by some evidence bearing some indicia of reliability.

July 1999 the parole board denied parole upon the ground release would pose an unreasonable risk of danger to society and a threat to public safety.  This conclusion was based upon findings the offense was carried out in an especially callous manner with a disregard for the life and suffering of another and in a dispassionate manner.  Petitioner attacked the victim, shot the victim seven times, and stabbed him several times, causing his demise.  Petitioner then stole the victim's property, his truck and keys and "a lot" of money in the truck.  The board also found petitioner had not sufficiently participated in self-help and therapy programing and that he needs therapy in order that he might delve into the crime which he still depicts as a defense of his own life rather than an attack upon the victim.  Until more progress is made he remains unpredictable and a threat to others. Memorandum in Support of Petition, Ex. A. pp 44-45.

The record clearly contains ample evidence to support the decision denying parole; indeed, no other decision would have been reasonable.

It is not disputed the victim was shot seven times, stabbed and robbed.  At trial in 1986, petitioner denied

involvement.  At a parole hearing in 1996 petitioner was asked if he thought he acted in self-defense and he said "yes and no." Memo., Ex. F.  At the July 1999 hearing he denied he murdered the victim; he said the victim was attacking him and "I shot him." He testified the victim was the aggressor and it was necessary to shoot him.  Answer, Ex. C, pp 9-10.  He said he could not remember what he did with the murder weapon.  Id. p. 11.  He admitted shooting the victim seven times but said he was "shooting over his head" and that he "didn't realize at the time that [he] was hitting him."  Id. P. 30-31.  He said he did not remember cutting the victim.  Id.  Petitioner had a favorable psychological report from Dr. Melvin Macomber but it was not based upon a truthful account; petitioner told Dr. Macomber that he had never been involved with drug abuse such as cocaine, heroin or amphetamines but in fact had been addicted to heroin. Memo., Ex. B, p. 2 (psychologist's report); Answer, Ex. C, pp 32-33 (evasive and inconsistent answers to questions about heroin addiction).

    I therefore recommend the petition be denied.

    Dated:  May 25, 2005.

```
                              /s/ Peter A. Nowinski
                              PETER A. NOWINSKI
                              Magistrate Judge
```